UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHERYL MARCHAND,<br><br>    Plaintiff,<br><br>    v.<br><br>GRANT COUNTY,<br><br>    Defendant. | NO. CV-07-182-RHW<br><br>**ORDER DENYING, IN PART, AND GRANTING, IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court is Defendant's Motion for Summary Judgment (Ct. Rec. 27). The motion was heard without oral argument.

Plaintiff is bringing § 1983 claims against Grant County, Washington for deprivation of her constitutional rights to freedom of association, freedom of speech, liberty, and due process, and a state law claim for false arrest. Plaintiff originally filed her complaint on May 14, 2007 Chelan County Superior Court. Defendant filed for removal of the case to the Eastern District of Washington on June 4, 2007. Defendant now moves for summary judgment.

## BACKGROUND FACTS

The following facts are taken from the parties' pleadings and are presented in the light most favorable to Plaintiff, the non-moving party.

This case stems from two separate incidents that occurred in 2005 and 2006, involving the Grant County Fair (hereinafter "Fair"). The first incident occurred during the 2005 Fair.

Plaintiff is involved with the local 4-H horse program. She is a trainer and had some of her students showing at the Fair. She had three of her horses boarded at the fair, and was staying in her motor home on the fairgrounds during the fair.

On the night in question, Plaintiff was asked to man the horse gate at the fair. While she was at the gate, Glenna Courneya, the Fair's Western Games Chairperson, asked Mary Lou and Travis Langley to take Plaintiff's place.[1]

According to Plaintiff, Ms. Langley came up to the gate and pushed her out of the way, without discussing or notifying her that she was being replaced. Ms. Langley stated something like, "that's okay. We'll take care of this."

Plaintiff became upset and said, "What the hell?" She then turned around and walked out of the building. Plaintiff thought about what happened as she walked away, and decided to go back to speak with Ms. Langley again. She walked up to her and whispered, "You will never waste my time again like this, you asshole." Plaintiff was upset because she has spent a couple of hours at the gate and she felt she was being summarily dismissed.

Plaintiff then went to her motor home and began to relax. Minutes later, there was a knock on her door. She opened the door and two Grant County Sheriff Officers were standing there. They asked her if she was Cheryl Marchand, and she answered, "Yes." One of the officers said that the Grant County Fair Board wants you out of here five minutes ago. He asked whether Plaintiff had a problem with someone, and she replied that she had. He told her again that the Fair Board wanted her gone, and told her to get her shoes on and come outside. He told her that the gates would be opened to permit her to take her motor home, horse trailers, and equipment home. Plaintiff went to the stalls and began to take down her posters and decorations. She loaded up the hay, her tack, and began packing the horse trailer. She was told that she could not take her horses home. When she

---

[1] Ms. Courneya believed that Plaintiff was wearing open-toed shoes, which was against policy. Plaintiff disputes that she was wearing open-toed shoes.

**ORDER DENYING, IN PART, AND GRANTING, IN PART,
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2**

went to the horse barn, there were two Grant County Sheriffs on horses. They hold her that she was not going to be able to take the horses home.

Plaintiff continued to remove her tack and load her horse trailer. There were people milling around. Gary Ribail was also there. Plaintiff approached Gary Ribail[2] and indicated that she was going to hold him responsible for her horses. Mr. Ribail then said that she could take them home. Plaintiff then loaded up her horses and hay.

After Plaintiff left the area and returned to her motor home, Ms. Langley complained to Bonnie Rae, the Director of the Horse Arena and member of the Fair Board about Plaintiff's behavior. Ms. Langley accused Plaintiff of threatening her. She told Ms. Rae that she was fearful of Plaintiff. Ms. Rae radioed Gary Ribail and reported that Plaintiff had verbally assaulted Mary Lous Langley. Ms. Langley was upset. She stated that Plaintiff had confronted her and she believed that Plaintiff has threatened her physical well-being. She stated that Plaintiff had used a number of profanities and had done so in a loud manner. Mr. Ribail asked Ms. Langley to provide a written statement of what happened, which she did.

Mr. Ribail then consulted with Al Holman, the Grant County Fair and Facility Manager. Based on Mr. Ribail's prior knowledge of two incidents in the past at the Fair in which Plaintiff had to be warned about her use of profane language, Mr. Holman amd Mr. Ribail concluded that Plaintiff's conduct warranted ejecting her from the Fair. Specifically, they concluded that Plaintiff violated the Guest Code of Conduct. Mr. Ribail contacted a Grant County Sheriff's deputy and asked that he contact Plaintiff that she needed to leave the Fair.

Prior to the 2005 Fair, the Fair Board passed a Code of Conduct for Fair patrons. The Code was written by Mr. Ribail and published in the 2005 Fair

---

[2]In 2005, Mr. Ribail was the Chairman of Security and Parking for the Grant County Fair.

**ORDER DENYING, IN PART, AND GRANTING, IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3**

Tabloid, which was handed out to patrons as they entered the Fair.

The Grant County Fair Guest Code of Conduct states:

> The Grant County Fair Association is committed to creating a safe, comfortable and enjoyable experience for our guests at Grant County Fair and Spring Fair/Home Show on the Grant County Fairgrounds.
> Our staff will proactively intervene to support an environment where guests can enjoy the Fair experience free from unacceptable behavior, including the following:
> - Foul/abusive language or obscene gestures
> - Intoxication or other signs of impairment related to alcohol consumption
> - Displays of affection not appropriate in a public, family setting
> - Obscene or indecent clothing
> - Any disruption of the events and attractions, including throwing of objects or trespassing on the show ring, context or in restricted areas
> - Fighting, taunting, or making threatening remarks or gestures.
>
> Any guest not adhering to the above code or behavior in an unruly manner will be removed from the Fairgrounds. The Grant County Fair and Fairgrounds management reserve the right to determine what is unruly or unacceptable behavior, warranting removal.

(Ct. Rec. 32-2).

The second incident Plaintiff complains of occurred when in April, 2006, the Fair Board voted to ban Plaintiff from attending both the Spring and Fall Fairs. The Board sent Plaintiff a letter advising her of the Fair Board's decision. In the letter, Plaintiff was notified that she had an opportunity to appeal the Board's decision, which she did. A hearing was held in June, 2006. At the hearing, Plaintiff and her counsel presented argument, in which Plaintiff told a much different version of the events in question. Consequently, the Fair Board decided to allow Plaintiff to attend future Grant County Fairs if she signed an agreement promising that if any future problems arose she would forfeit her right to attend future fairs. It was Plaintiff's understanding that someone from the Board would be drafting the letter of agreement and sending it her counsel. It does not appear the letter was ever drafted, or if it was that Plaintiff received a copy of the letter.

**STANDARD OF REVIEW**

**ORDER DENYING, IN PART, AND GRANTING, IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party had the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets it initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 325; *Anderson*, 477 U.S. at 248.

In addition to showing that there are no questions of material fact, the moving party must also show that it is entitled to judgment as a matter of law. *Smith v. University of Washington Law School*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323.

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### MUNICIPAL LIABILITY

Plaintiff is not asserting claims against any individuals in their individual or official capacity–rather, Plaintiff is alleging claims against Grant County, Washington.  Thus, she must establish *Monell* liability—that is, she must establish that her constitutional rights were violated as a result of an official policy or custom. *Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91 (1978).  To

**ORDER DENYING, IN PART, AND GRANTING, IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5**

impose liability on a local governmental entity for failing to act to prevent a deprivation of constitutional rights, a § 1983 plaintiff must establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy "amounts to deliberate indifference" to the plaintiff's constitutional right; and (4) that the policy is the "moving force behind the constitutional violation." *Oviatt v. Pierce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (*quoting City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989).

There are three ways to meet *Monell's* policy or custom requirement: (1) where a city employee commits the alleged constitutional violation pursuant to a formal government policy or a "longstanding practice or custom which constitutes the 'standard operating procedures' of the local government entity'"; (2) where the individual who committed the constitutional tort was an official with "final policy-making authority" and that the challenged action itself thus constituted an act of official government policy; and (3) where an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it. *Hopper v. City of Pasco*, 241 F.3d 1067, 1083 (9th Cir. 2001)(citations omitted).

## DISCUSSION

Defendant argues that Plaintiff cannot establish *Monell* liability because first, her constitutional rights were not violated; second, she cannot show that the policy represented a deliberate indifference to her constitutional rights; and third, she cannot establish causation–that is, that a policy or custom was the moving force behind the alleged constitutional violation. Plaintiff is asserting three constitutional claims against Grant County–Free Speech, Due Process, and Freedom of Association. Each of these will be addressed in turn.

**A.    Free Speech**

In determining whether Plaintiff's Free Speech rights were violated the Court must first determine the nature of the forum that was created by the

**ORDER DENYING, IN PART, AND GRANTING, IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6**

Government, and then determine whether the Guest Code is facially unconstitutional or whether it was unconstitutionally applied. to Plaintiff.

The forum at issue in this case is a county fair. The Court finds that the county fair is a limited public forum. *See Hodge v. Lynd*, 88 F. Supp. 2d 1234, 1241 (D.N.M. 2000). A limited public forum is treated the same as nonpublic fora–that is, restrictions that are viewpoint neutral and reasonable in light of the purpose served by the forum are permissible. *Hopper*, 241 F.3d at 1074.

### 1.   Facial Challenge

In applying rational review to the Guest Code of Conduct, the Court finds that it meets constitutional scrutiny. As the district Court of New mexico explained:

> These entertainment events are open to any member of the general public who can pay the admission, and access to the events is not restricted to authorized persons, as it is in the case of limited-access facilities. On the other hand, the events are organized and presented for particular purposes or combinations of purposes. Events such as the Fair or the state fair, for example, provide (among other things): (1) entertainment in the form of the rodeo and the carnival rides; (2) education, through the exhibits; and (3) competition in animal husbandry and other skills, in the awards for best livestock, baking contests, and other competitions. *See Mood For A Day*, 953 F.Supp. at 1261. The government entity sponsoring a fair or concert has an interest in ensuring that the particular purposes for the event are met, and in excluding individuals who are disrupting the event in some manner or who threaten to do so. This is so even if the individuals are not in violation of any law, but are merely violating the rules of the event. Therefore, the government has more authority to exclude individuals from events such as the Fair than from a public street or park.

*Cite.*

### 2.   As Applied Challenge

Defendant argues that the Guest Code of Conduct was not unconstitutionally applied to Plaintiff because the words she uttered are not words protected by the First Amendment. The Court agrees.

The right of free speech is not absolute. *Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 571 (1942). In *Chaplinsky*, the Supreme Court made the following observation:

**ORDER DENYING, IN PART, AND GRANTING, IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7**

> There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words–those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. 'Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument.'

*Id.* at 572

Plaintiff admits that at a minimum, she said, "What the hell?" and "You will never waste my time again like this, you asshole." While the Court does not find that Plaintiff's words as threats, the Court finds that these words were not for the communication of information or an opinion and therefore are not safeguarded by the Constitution. Notably, the statements were directed to one person, Ms. Langley, and Plaintiff indicates that with respect to her second statement she whispered the words in Ms. Langley's ears. The Court finds that Plaintiff's Free speech rights were not violated when she was expelled from the Grant County Fair.

**B.    Due Process Rights**

In her complaint, Plaintiff alleges that her due process rights were violated but does not identify whether she is alleging a substantive or a procedural due process claim.

The Court does not find that the right to attend a county fair implicates Plaintiff's substantive due process rights. Courts have generally limited the protections of the substantive due process have to matter relating to marriage, family, procreation, and the right to bodily integrity. *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 n.4 (9th Cir. 1998). Substantive due process rights "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them' " *Id.*

On the other hand, Plaintiff has a liberty interest in attending the Grant

**ORDER DENYING, IN PART, AND GRANTING, IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8**

1  County Fair that requires procedural due process. *See Hodge*, 88 F.Supp.2d at
2  1242. To prevail on her procedural due process claim, Plaintiff must show that she
3  has a liberty interest that is protected by the Constitution; (2) a deprivation of the
4  interest by the government; and a (3) lack of required process. *Portman v. County
5  of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). "To satisfy procedural due
6  process, a deprivation of life, liberty, or property must be 'preceded by notice and
7  opportunity for hearing appropriate to the nature of the case." *Lone Star Security
8  & Video v. City of Los Angeles*, 572 F.3d 685, 694 (9th Cir. 2009). There are
9  exceptions to the general rule of notice and opportunity to be heard. *Id.* The
10 Government does not need to give notice in an emergency, or if notice would
11 defeat the entire point of the seizure, or when the interest at stake is small relative
12 to the burden that giving notice would impose. *Id.*

13       In this case, Plaintiff asserts that she was removed from Fair by the Board
14 members without giving her an opportunity to address the allegations that were
15 being levied against her. In order to determine whether Plaintiff's due process
16 rights were violated, the jury will have to consider a number of factors; for
17 instance, the time delay from the confrontation and the decision to expel Plaintiff,
18 whether an emergency situation prevented the Board members from first
19 approaching Plaintiff prior to asking the sheriff officers to remove her from the fair
20 grounds, whether the confrontation disrupted any events that were taking place, or
21 whether the confrontation resulted in some injury to a fair-goer. In viewing the
22 facts in the light most favorable to Plaintiff, the Court finds that a reasonable jury
23 could find that Plaintiff's due process rights were violated when she was expelled
24 from the 2005 Grant County Fair without being afforded an opportunity to present
25 her side of the story.

26       This does not end the inquiry, however, because Plaintiff is asserting claims
27 against Grant County and therefore must establish *Monell* liability. To do so,
28 Plaintiff must establish either the decision-making official was, as a matter of state

**ORDER DENYING, IN PART, AND GRANTING, IN PART,
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9**

law, a final policymaking authority "whose edicts or acts may fairly be said to represent official policy" in the area of decision, or by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate. *Urich v. City and County of San Francisco,* 8 F.3d 968, 985 (9th Cir. 2002) (citations omitted).

"The fact that a particular official-even a policymaking official-has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Id.* An official may be found to have been delegated final policymaking authority where "the official's discretionary decision is [not] 'constrained by policies not of that official's making' and . . . [not] 'subject to review by the municipality's authorized policymakers.' " *Id.* (citations omitted).

The Court finds that a reasonable jury could find that Mr. Ribail had final decision-making authority, that his decision to expel Plaintiff from the Grant County Fair did not afford Plaintiff any due process, and liability for this decision could be imputed to Grant County. As such, summary judgment is not appropriate.

Additionally, Plaintiff alleges that her due process rights were violated when the Fair Board voted to ban Plaintiff from attending both the Spring and Fall Fairs. Although the Fair Board acted unilaterally in April, 2006, when it voted to ban Plaintiff, it provided her notice and an opportunity to be heard regarding her explusion, which occurred in June, 2006. At that hearing, the Board proposed a compromise to which Plaintiff and her attorney acquiesced. There is nothing in the record to suggest that she was subsequently denied access to attend other Fairs. As such, the Court grants summary judgment with respect to Plaintiff's claim that her due process rights were violated when the Fair Board voted to ban Plaintiff from attending fairs, and then subsequently voting to reinstate her privileges.

**ORDER DENYING, IN PART, AND GRANTING, IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10**

C.  **Freedom of Association**

"[I]"implicit in the right to engage in activities protected by the First Amendment is a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Boy Scouts v. Dale*, 530 U.S. at 647.  "The First Amendment's freedom of association protects groups whose activities are explicitly stated in the amendment: speaking, worshiping, and petitioning the government." *IDK, Inc. V. Clark County*, 836 F.2d 1185, 1192 (9th Cir. 2007).  In *Boy Scouts*, the Supreme Court held that the Boy Scouts organization engaged in expressive activity where their general mission was "to instill values in young people." *Id.* at 649-50,

Here, Plaintiff was active in the 4-H community, whose purpose is to develop in youth leadership, citizenship and life skills.[3]  The 4-H organization can be directly compared to the Boy Scouts of America.  The Court finds that Plaintiff has a constitutional right to associate with other members of the 4-H community.

In *Villegas v. City of Gilroy*, 484 F.3d 1136 (9th Cir. 2007), the Ninth Circuit rejected the Top Hatters Motorcycle Club engaged in the type of activities that would be afforded First Amendment protections.  In that case, the Club was prevented from attending the Gilroy Garlic Festival because of an unwritten policy of the Festival that provided that persons attending the festival not be permitted to wear gang colors or other demonstrative insignia, including motorcycle club insignia.  The Circuit held that the Top Hatters Motorcycle Club right to association was not violated.  The Circuit reasoned that the defendants' refusal to permit the plaintiffs access to the festival only limited the plaintiffs' access to a particular location—a location that had no relation to the purposes underlying their association with one another.  *Id.*  The same can not be said with respect to the Grant County Fair and the 4-H organization.  Based on the Court's experience, the

---

[3]About 4-H, The 4-H Story, http://www.4-h.org. (last visited September 15, 2009).

**ORDER DENYING, IN PART, AND GRANTING, IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11**

1 county fair and 4-H go hand and hand, especially in the rural areas. Many of the 4-H youth show animals and enter projects in the county fair. To deny a person who participates in 4-H access to the county fair is to deny him or her access to the one event that epitomizes all for which the 4-H organization stands.

The Court finds that Plaintiff has a constitutional right to associate with other 4-H members, that the Grant County Fair expressly provides an opportunity for 4-H members to meet and engage in expressive activity, and that a reasonable jury could find that Plaintiff's right to associate was infringed upon when she was summarily removed from the Grant County Fair.

As discussed above, the Court finds that a reasonable jury could find that the removal of Plaintiff was the result of a final decision maker and therefore summary judgment is not appropriate.

The Court does not find that Plaintiff's right to association was violated by the Fair Board in its decision to ban Plaintiff from future fairs and subsequently reinstate her fair privileges, where Plaintiff acquiesced and agreed to the proposed resolution.

**D.    False Arrest**

Plaintiff is also asserting a state law claim for false arrest. Defendant argues that Plaintiff's claim must fail because she cannot establish that she was arrested. The Court agrees.

Under Washington law,

> A person is restrained or imprisoned when he is deprived of either liberty of movement or freedom to remain in the place of his lawful choice; and such restraint or imprisonment may be accomplished by physical force alone, or by threat of force, or by conduct reasonably implying that force will be used. One acting under the apparent authority-or color of authority as it is sometimes described-or ostensibly having and claiming to have the authority and powers of a police officer, acts under promise of force in making an arrest and effecting an imprisonment.

*Bender v. City of Seattle*, 99 Wash.2d 582, 591 (1983) (citation omitted).

Here, while Plaintiff was asked to leave the premises, her freedom was not

**ORDER DENYING, IN PART, AND GRANTING, IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12**

restrained once she left the fairgrounds. She was free to go where ever she wanted. Because Plaintiff cannot show that she was unlawfully arrested, it would be futile to permit her to amend her complaint to add a false arrest claim under § 1983.

**E.   Conclusion**

The Court grants Defendant's Motion for Summary Judgment with respect to Plaintiff's free speech and false arrest claims, and denies Defendant's Motion for Summary Judgment with respect to her due process and freedom of association claims.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion for Summary Judgment (Ct. Rec. 27) is **DENIED**, in part, and **GRANTED**, in part.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this Order and to furnish copies to counsel.

**DATED** this 15th day of September, 2009.

　　　　　　　　　　　*s/Robert H. Whaley*
　　　　　　　　　　　ROBERT H. WHALEY
　　　　　　　　　　　United States District Judge

Q:\CIVIL\2007\Marchand\deny.sj.wpd

**ORDER DENYING, IN PART, AND GRANTING, IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13**